MJF:PT
F# 2009R01953

**M-09-1087**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

TASHEEN SYED,

          Defendant.

- - - - - - - - - - - - - - - - -X

UNDER SEAL

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF
ARREST WARRANT
(T. 18, U.S.C., § 1349)

EASTERN DISTRICT OF NEW YORK, SS.:

      EDWARD CHOO, being duly sworn, deposes and says that he is a Supervisory Investigator with the Office of the Inspector General, Port Authority of New York and New Jersey ("PA-IG"), duly appointed according to law and acting as such.

      Upon information and belief, from in or about and between January 2004 and November 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant TASHEEN SYED together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice and attempting to do so, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals,

2

pictures and sounds, to wit: interstate facsimiles and electronic mail ("e-mail") of documents confirming that cash was exchanged for fraudulently executed forms that were intended to be submitted to the New York City Department of Buildings ("DOB"), in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349)

The source of your deponent's information and the grounds for his belief are as follows:[1]

I. INTRODUCTION

1. I have been an Investigator for the PA-IG since 2001. Investigators for the PA-IG, including myself, are cross-designated as deputy U.S. Marshals by the United States Marshal's Service. The work of the PA-IG includes investigating fraud associated with construction projects performed for the Port Authority of New York and New Jersey ("Port Authority") and referring such frauds to federal authorities for prosecution. Prior to joining the PA-IG, I worked for 23 years in federal law enforcement, including five years as a special agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF") and 18 years as a special agent with the United States Customs Service, from which I retired in 2001 as a supervisory special agent. During my 23

---

[1] Because the purpose of this affidavit is to set forth probable cause to believe that the defendants committed the charged crime, I have set forth only those facts necessary to establish probable cause to arrest.

years as a federal agent at ATF and U.S. Customs, I participated in an undercover capacity in numerous investigations and supervised many other agents acting in an undercover capacity. The facts set forth herein are based on my personal observations, including in an undercover capacity, information from confidential sources and witnesses, my discussions with other law enforcement officers and my review of documents and other evidence, including consensual recordings, and on my experience and background as a criminal investigator.

2. During the course of my investigation of the construction industry, I have learned that construction contractors working in New York City are required to have various forms signed by certain classes of engineers. A Technical Report 1 ("TR-1") is required by DOB to demonstrate compliance with all inspections and tests that are required by the New York City Building Code, before DOB will issue a "sign-off" to a job filed with the DOB. Without such sign-off, the DOB will not issue a certificate of occupancy for the project. For various aspects of a construction project, such as welding, concrete, bolt strength, plumbing, and many others, different TR-1 forms must be signed and stamped by a Licensed Professional Engineer ("LPE") or a Registered Architect ("RA"), and then submitted to DOB. The LPE or RA stamping the TR-1 signifies that the LPE affirms that the work listed on the TR-1 has been satisfactorily done. Before

stamping and signing, the LPE or RA must have inspected the work himself or herself and found the work satisfactory, or inspected paperwork indicating a satisfactory result that was submitted by a tester licensed to inspect that kind of work.  LPEs and RAs are licensed by the New York State Department of Education, Office of the Professions.  Once signed and stamped by an LPE or RA, all TR-1s must be submitted to the DOB.  I have further learned during the course of the investigation that construction testing companies licensed by DOB to test projects in New York City must have a LPE or RA registered with DOB as the laboratory director for the testing company.  As detailed below, in exchange for money the defendant TASHEEN SYED, who is an LPE, gave his LPE stamp to other people who were not LPEs or RAs, so they could stamp TR-1s with SYED's LPE stamp.

II.  ASSISTANCE OF THE COOPERATING WITNESSES AND INFORMATION THEY PROVIDED REGARDING THE DEFENDANT

3.  In October 2008, I led a team of agents who arrested two individuals ("CW-1" and "CW-2") for submitting false welding reports and improperly stamping TR-1s.  CW-1 and CW-2, who were not LPEs or RAs, ran a construction testing business located in Brooklyn, New York.  While acting in an undercover capacity in December 2007, I paid CW-2 $1,500 to stamp a TR-1 I gave them with an LPE's stamp.  The stamp CW-2 had used to stamp the TR-1 I gave them was the stamp of the defendant TASHEEN SYED.  CW-2 also signed SYED's name and initials on the TR-1 that I had

5

given them. As part of the scheme, CW-2 sent a facsimile of an invoice for the payment I had made to him from their Brooklyn offices to New Jersey.

4. In April 2008, I paid CW-1 and CW-2 $450 at their Brooklyn office to stamp a second TR-1 with an LPE's stamp and then sign and initial the LPE's name and initials. The stamp they used was again the stamp of the defendant TASHEEN SYED. As part of the scheme, CW-1 and CW-2 directed a secretary to send me an invoice for that payment by e-mail from their Brooklyn offices to New Jersey.

5. Upon their arrests, CW-1 and CW-2 agreed to cooperate with law enforcement, and eventually they agreed to plead guilty to federal crimes. CW-1 and CW-2, who are not LPEs, each separately told me that they had known the defendant TASHEEN SYED for a number of years. They also told me that SYED was listed in documents filed with DOB as the laboratory director for their construction testing business, even though SYED only visited the business approximately once a month during the past four years. CW-1 and CW-2 further told me that for the past few years they had paid SYED a monthly fee of approximately $1,500. In exchange for these funds SYED both (1) rented SYED's LPE stamp to CW-1 and CW-2, and (2) permitted CW-1 and CW-2 to list SYED as the engineering director for their business. CW-1 and CW-2 said that when SYED did other work for them, they paid SYED additional

6

amounts of money. Soon after their arrests, CW-1 and CW-2 gave me consent to search the Brooklyn offices of their business. Within those offices, I found SYED's LPE stamp inside a drawer in a desk used by a secretary, where CW-1 and CW-2 had told me the stamp was located.

III. TASHEEN SYED

6. The defendant TASHEEN SYED was an LPE. From approximately 1998 to approximately 2004, SYED worked for CW-1 and CW-2 at their testing company. Since approximately 2004, SYED has continued to serve as the registered laboratory director for CW-1 and CW-2's company, while also operating his own businesses in the construction field.

IV. RECORDING OF TASHEEN SYED

7. On October 30, 2008, CW-2 placed a recorded telephone call to the Defendant TASHEEN SYED. During this call, CW-2 told SYED that CW-2 had been interviewed by DOB about certain matters, including the signing of TR-1s. SYED responded that from now on they had to be careful, and said (in English) "Let's do it the proper way." SYED further told CW-2 that in the future he would actually come to CW-2's office to sign and stamp TR-1s himself.[2]

---

[2] CW-2 and SYED mostly engaged in this conversation, as well as other conversations recounted below, in the Hindi and Urdu languages (Hindi and Urdu are sufficiently similar that speakers of the two languages can communicate with each other), but certain words and sentences were spoken in English. I have

8.  Later on October 30, 2008, CW-2 and the defendant TASHEEN SYED met at CW-2's Brooklyn offices and engaged in a conversation that was captured on a hidden recording device worn by CW-2. During this conversation, CW-2 told SYED that DOB had met with CW-1 and that DOB had asked CW-2 about TR-1s that had been stamped using SYED's LPE stamp. CW-2 and SYED agreed that they needed to be more careful in the future regarding CW-1 and CW-2's use of SYED's stamp, and SYED stated that "every time you sign, it's one count," meaning that each time CW-2 signed SYED's initials and name underneath the stamp on a form constituted a separate crime that could be charged against CW-2.

9.  CW-1 then asked the defendant TASHEEN SYED if there was anything they could do about CW-1 and CW-2's past use of SYED's stamps and signing SYED's name, meaning that since CW-2's purported meeting with DOB, CW-1, CW-2 and SYED had to be prepared for authorities to ask questions about the issue. SYED responded that CW-2 should not worry about those past events. CW-2 then suggested to SYED that SYED start stamping and signing TR-1s himself, rather than having CW-1 and CW-2 use SYED's stamp and sign SYED's name. SYED responded that CW-2's suggestion made

---

obtained a certified translation of the portions of the conversation that were in Hindi and Urdu, and my understanding of the Hindi and Urdu portions of the conversation, including portions quoted herein, is derived from that certified translation. I further reviewed the entire transcript with CW-1, who speaks Hindi and Urdu as well as English.

8

sense, but for SYED to start signing TR-1s would constitute incriminating himself, meaning that the change in the appearance of SYED's signature would draw attention and would appear incriminating.

10. CW-2 then asked the defendant TASHEEN SYED if SYED was going to start changing the signature SYED used when SYED signed documents that he stamped using his LPE stamp, in order to make SYED's signature more closely resemble the signatures of SYED that CW-1 and CW-2 had forged on various documents they submitted to DOB after stamping them with SYED's LPE stamp. SYED responded that he would change his signature, but gradually.

11. CW-2 then returned the conversation to the past instances when CW-1 and CW-2 used the LPE stamp that the defendant TASHEEN SYED had given them, and they then signed SYED's name to the documents they had stamped. SYED told CW-2 "I'll say I did them... who can prove that they are not mine?" SYED then suggested that CW-2 should agree to testify that SYED stamped and signed the documents in CW-2's presence. SYED told CW-2 to tell a former employee of CW-1 and CW-2 that unless the former employee agreed to falsely testify that SYED signed the TR-1s, the former employee would be blamed for not taking appropriate action when he saw that the signatures were missing or forged. Later in the conversation, SYED rhetorically asked "what do they have to prove that is not my signature? How can

they do that?" CW-2 responded that SYED did not in fact sign the documents in question. SYED replied "but how would they know if I don't tell them?" Soon after, SYED added "In my opinion, in absence of any proof to the contrary, this fact need not be disclosed to them."

12. At one pont during the conversation, the defendant TASHEEN SYED asked CW-2 whether all of the reports, meaning the forms that CW-1 and CW-2 stamped and signed using SYED's stamp and forged signature, were genuine. CW-2 responded that the reports were indeed genuine, and that SYED knew this, which is why SYED entrusted CW-1 and CW-2 with SYED's stamp. SYED acknowledged CW-2's statement, and CW-2 asked SYED why he left his stamp with CW-2. SYED responded that he had confidence in CW-2 and knows that CW-2 is knowledgeable.

13. Eventually, CW-2 showed the defendant TASHEEN SYED an example of SYED's signature that CW-2 had previously forged. CW-2 also printed out a blank TR-1 form regarding a project at 54 Bond Street in Manhattan.[3] CW-2 then wrote out his version of SYED's forged signature in front of SYED, so SYED would start signing his signature that way when SYED stamped and signed documents. SYED then signed the TR-1 form that CW-2 had printed

---

[3] This TR-1 was created by CW-2 at the direction of law enforcement for the purpose of obtaining SYED's signature and did not pertain to an actual project.

10

out, attempting to make his signature look like the forged signature that CW-2 had shown SYED and demonstrated for him.

IV. CONCLUSION

WHEREFORE, I respectfully request that a warrant be issued for the arrest of the defendant TASHEEN SYED so that he may be dealt with according to law.

*Edward Choo*
EDWARD CHOO
Supervisory Investigator
Office of the Inspector General
Port Authority of New York and New Jersey

Sworn to before me this
4th day of November, 2009

_____
JDGE
EASTERN DISTRICT OF NEW YORK